UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR INFORMATION ASSOCIATED WITH A CELLULAR DEVICE LINKED WITH AND IDENTIFIED BY THE EMAIL ACCOUNT KTBROWN2733@GMAIL.COM THAT IS STORED AT GOOGLE, INC., 1600 AMPHITHEATER PARKWAY, MOUNTAIN VIEW, CALIFORNIA | Misc. No. |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Robert Graves, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. This affidavit is being submitted in support of an application for authorization to search all location data, whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, and precision measurement information such as timing advance or per call measurement data, and Wi-Fi location, including the GPS coordinates and the dates and times of all location recordings, from Google, Inc. ("Google"), located in Mountain View, California, possessing the aforementioned records for the account, KTBROWN2733@GMAIL.COM, from January 27, 2015, to February 7, 2015.

2. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.     I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since January of 2015, where I am currently assigned to squad CR-2 at the Washington Field Office (WFO). Squad CR-2 is responsible for conducting violent crime investigations in the Washington, D.C. area. Through my employment with the FBI, I have personally participated in the investigations of alleged violations of the criminal laws of the United States. In particular, I have investigated violent crimes including bank robberies, threats against persons, and commercial robberies. I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, and investigative interviews. I have served Administrative and Grand Jury subpoenas, as well as, analyzed telephone caller identification system data, and the execution of search and arrest warrants. Through instruction and participation in investigations, I have become familiar with the manner in which criminal offenders conduct their illegal business and the methods, language, and terms that are used to disguise conversations about their activities.

4.     The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal, state and local law enforcement officers and information obtained from interviews and analysis of reports. All observations referenced in this affidavit that were not made by me were related to me by the person who made such observations. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements. Additionally, wherever in this affidavit I quote statements made by an individual; those quotations have been taken from draft transcripts/summaries of those statements, which are subject to further revision.

5. I have not set forth each and every fact learned during the course of this investigation. I have set forth only those facts which establish the foundation for probable cause. Facts not set forth herein are not being relied upon to establish probable cause. Nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit in support of a search warrant for the target telephones.

## SUMMARY OF THE RELEVANT TECHNOLOGY

6. A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. Cellular telephones rely on cellular towers, the location of which may provide information on the location of the subject telephone. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

7. Google is an Internet company which, among other things, provides electronic communication services to subscribers. Google's electronic mail service, known as Gmail, allows subscribers to communicate with other Internet Service Provider ("ISP") subscribers through the Internet. Subscribers to Google use unique screen names and/or email addresses during communications with others. The screen names and/or email addresses may or may not identify the real name of the person using a particular screen name or email account.

8. Google has developed an operating system for mobile devices, including cellular phones, known as Android. Almost every cellular phone using the Android operating system has an associated Google account. When a user first turns on a new Android device, they are prompted to add a Google account. The options are limited to using an existing account or

creating a new one. The account creation process generates an account and email account using the familiar ____@gmail.com format. This account remains active even if the user has another primary email account with another provider.

9. Google collects and retains location data from Android enabled mobile devices. The company uses this information for location based advertising and location based search results. Per Google, this information is derived from GPS data, cell site/cell tower information, and Wi-Fi access points. While the specific parameters of when this data is collected are not entirely clear, it appears that Google collects this data whenever one of their services is activated and/or whenever there is an event on the mobile device such as a phone call, text messages, internet access, or email access. This data may show the movements and locations of an individual's mobile device and assist investigators with establishing the individual's locations or movements at particular dates and times.

## BACKGROUND OF THE INVESTIGATION

10. The defendant, David Flowers, is currently the subject of a twenty-two count indictment in the case of United States v. David Flowers, 15-CR-23 (BAH), currently pending in the United States District Court for the District of Columbia. I am currently the lead investigator in this case. In the indictment, DAVID FLOWERS is charged with committing the following violations of law: (1) Interference with Interstate Commerce by Robbery, in violation of Title 18, United States Code, § 1951; (2) Armed Robbery, in violation of Title 22, District of Columbia Code, Sections 2801 and 4502 (2001 ed.); and (3) Possession of a Firearm During a Crime of Violence or Dangerous Offense, in violation of Title 22, District of Columbia Code, Section 4504(b) (2001 ed.).

11.     Beginning in February 2014 and continuing through February 2015, a series of armed robberies of commercial establishments occurred in the District of Columbia and in the District of Maryland.  Contained in this affidavit are the armed robberies that occurred in the District of Columbia and references to robberies that occurred in the District of Maryland.  Numerous other robberies committed by DAVID FLOWERS occurred in the District of Maryland during the below time period but are not included in this affidavit (your affiant has included only those robberies which led to the arrest of FLOWERS).

**Armed robbery of the Ashley Stewart Store on February 7, 2014.**

12.     On February 7, 2014, at approximately 9:55 a.m., the Ashley Stewart store located at 2847 Alabama Avenue, S.E., was robbed.  The suspect demanded money at gunpoint.  The suspect was described as a black male, medium complexion, 6'01" tall, 190 lbs, slim build, dressed in all black, armed with a pistol.  Taken was $853.21 and checks totaling $190.  The suspect depicted on the store video footage was that of the suspect wearing a dark hooded sweatshirt with light colored draw strings, blue jeans, and light-colored gloves.  A witness observed the suspect exit the rear of the Ashley Stewart store and flee in a small, red sport-utility vehicle which was rounded (not boxy) and which appeared to be a Nissan or Toyota.

13.     For this alleged robbery, the defendant is charged under Counts One and Two of the Indictment for, respectively, committing the crimes of Armed Robbery and Possession of a Firearm During a Crime of Violence.

**Armed robbery of the Payless Shoe Store on September 12, 2014.**

14.     On September 12, 2014, at approximately 8:35 p.m., the Payless Shoe Store located at 2855 Alabama Avenue, S.E., was robbed by a suspect who brandished a handgun and demanded money.  The suspect was described as a black male, medium brown complexion, 6'01"  to 6'05"

tall, slender build, possibly in early to late 30's, dark uniform shirt, dark pants, black mask, armed with a silver handgun. Taken was $1,000. The suspect was not captured on security camera footage.

15. For this alleged robbery, the defendant is charged under Counts Three, Four, and Five of the Indictment for, respectively, committing the crimes of Interference with Interstate Commerce, Armed Robbery, and Possession of a Firearm During a Crime of Violence.

**Armed robbery of the Murry's Food Store on October 13, 2014.**

16. On October 13, 2014, at approximately 9:00 a.m., the Murry's Food Store located at 3932 Minnesota Avenue, N.E., was robbed by a suspect who brandished a handgun and demanded money. The suspect was described as a black male, medium complexion, approximately 6' to 6'02" in height, 170 to 180 lbs, medium build, wearing a charcoal colored hooded top, black colored pants, a black mask, and armed with a black and silver handgun. Approximately $900 was taken. The suspect depicted on the store video footage was a black male, wearing a dark colored mask, dark colored hoodie with white strings hanging from the neck, light colored gloves, dark pants, armed with a silver handgun, and he placed the money in a white bag.

17. For this alleged robbery, the defendant is charged under Counts Six, Seven, and Eight of the Indictment for, respectively, committing the crimes of Interference with Interstate Commerce, Armed Robbery, and Possession of a Firearm During a Crime of Violence.

**Armed robbery of the Murry's Food Store on November 15, 2014.**

18. On November 15, 2014, at approximately 8:39 a.m., the Murry's Food Store located at 4025 South Capitol Street, S.W., was robbed by a suspect who brandished a handgun and demanded money. The suspect was described as a black male, 5'11" tall, 170 to 200 lbs,

wearing a black jacket with a hood, dark pants, wearing full or partial facemask and gloves and armed with a silver semi-automatic handgun. An undetermined amount of U.S. currency was taken. The suspect depicted on the store security cameras was wearing dark pants, a dark colored hooded sweatshirt with white strings hanging from the neck, brownish colored work boots, a black mask, and armed with a silver and black handgun. The suspect placed the money into a dark colored bag.

19. For this alleged robbery, the defendant is charged under Counts Nine, Ten, and Eleven of the Indictment for, respectively, committing the crimes of Interference with Interstate Commerce, Armed Robbery, and Possession of a Firearm During a Crime of Violence.

**Armed robbery of the Rainbow Clothing Store on December 10, 2014.**

20. On December 10, 2014, at approximately 10:00 a.m., the Rainbow Clothing Store located at 2853 Alabama Avenue, S.E., was robbed by a suspect who brandished a handgun and demanded money. The suspect was described as a black male, light complexion, freckles across his nose, 6'02" tall, medium build, wearing blue jeans, black hooded sweatshirt, black jacket, black mask, gloves, armed with a black colored handgun. Taken was approximately $700, a petty cash bag containing $620.62, and petty cash bag containing $386.33. The suspect depicted on the store video footage is a black male, wearing a dark hooded sweatshirt with the hood up, light colored pants, a dark mask, and wearing dark gloves. He placed the money into a white plastic bag.

21. For this alleged robbery, the defendant is charged under Counts Twelve and Thirteen of the Indictment for, respectively, committing the crimes of Armed Robbery and Possession of a Firearm During a Crime of Violence

**Armed robbery of the Radio Shack on December 22, 2014.**

22. On December 22, 2014, at approximately 7:20 p.m., the Radio Shack located at 2837 Alabama Avenue, S.E., was robbed by a suspect who brandished a handgun and demanded money. The suspect was described as a black male, medium complexion, 6'01" tall, slim build, early to mid-30's, wearing white garden or work style gloves, a face mask that covered the bottom half of his face, dark blue hoodie covered by a black jacket, light blue jeans, brown boots, armed with silver colored semi-automatic pistol. Taken was approximately $950. The suspect depicted on the store security cameras is a black male, wearing a dark colored hoodie, dark mask, blue jeans, white gloves that were two-tone: black colored palm and white on the back of the hand, brown boots and armed with a silver colored semi-automatic pistol.

23. For this alleged robbery, the defendant is charged under Counts Fourteen, Fifteen, and Sixteen of the Indictment for, respectively, committing the crimes of Interference with Interstate Commerce, Armed Robbery, and Possession of a Firearm During a Crime of Violence.

**Armed robbery (attempt) of the CVS Pharmacy on January 18, 2015.**

24. On January 18, 2015, at approximately 8:04 p.m., at the CVS Pharmacy located at 3240 Pennsylvania Avenue, S.E., a suspect entered the store, brandished a pistol and demanded money but nothing was taken. The suspect was described as a black male, 6'00" tall, medium complexion, 180 to 200 lbs, short hair, gray gloves, light blue jeans, dark blue hoodie, light brown work boots, black ninja ski mask, armed with a silver and black handgun. The suspect depicted on the store's security camera shows the suspect wearing a dark blue hooded sweatshirt, that appears to have a "Champion" brand logo on it with light colored drawstrings for the hood, a dark mask, blue jeans, white gloves that were two-tone (black colored palm and white on the back of the hand), brown boots and armed with a silver colored semi-automatic pistol. He was described as possibly being an older male because of his voice.

25. For this alleged attempted robbery, the defendant is charged under Counts Seventeen, Eighteen, and Nineteen of the Indictment for, respectively, committing the crimes of Attempted Interference with Interstate Commerce, Attempted Armed Robbery, and Possession of a Firearm During a Crime of Violence.

### Correlation to similar armed robberies in the District of Maryland.

26. As previously mentioned, a series of armed, establishment commercial robberies occurred throughout Prince George's County, Maryland. These robberies also began in February of 2014 and they also continued through to February 2015. There were approximately over twelve different commercial establishment robberies that appeared, through witness descriptions and various video footage, to be the same suspect in each case. This suspect fit the same physical description as the suspect in the aforementioned District of Columbia robberies. The suspect also wore what appeared to be the same clothing and utilized what appeared to be the same silver and black semi-automatic pistol in both the D.C. and Maryland robberies. Additionally, the suspect also executed the Maryland robberies in the same manner as in D.C. by committing the robberies either during the establishments' opening times in the morning or closing times in the evening.

### GPS tracking from the CVS Robbery in District Heights, MD on December 26, 2014.

27. On December 26, 2014, at approximately 9:55 p.m., the CVS Pharmacy located at 4840 Marlboro Pike, Capitol Heights, Maryland, was robbed by a suspect who brandished a handgun and demanded money. The suspect was a described as a black male, 30 to 40 years in age, 6'00" tall, approximately 215 lbs, light complexion, light colored eyes, black knitted hat, gray hooded sweatshirt underneath a black coat, blue jeans with faded knees, gray and black gloves, armed with a silver and black handgun. Taken was $9000. A GPS tracking device was imbedded in a hollowed-out stack of money within that cash. The tracking device was tracked

and recovered in front of 524 57th Street, N.E., at 10:03 p.m. by the Prince George's County Police Department, which is only a few doors down from the residence of DAVID FLOWERS. A review of the route in which the tracking device traveled, the device was detected at the intersection of Southern Avenue and East Capital Street, S.E., where a traffic enforcement vehicle recorded images. A review of those images by law enforcement revealed a vehicle that appeared to be a gold or silver colored four door sedan at the same time the GPS tracking device subsequently indicated.

**Armed robbery (attempt) of the Kentucky Fried Chicken (KFC) on February 5, 2015 in Clinton, MD.**

28. On February 5, 2015, at approximately 8:50 a.m., there was an attempted armed robbery of the KFC Restaurant located at 6510 Coventry Way, Clinton, Maryland. The suspect entered, brandished a handgun and demanded money. The suspect was described as a black male, light to medium complexion, about 30 to 40 years in age, about 6' tall, weighing about 215 lbs, wearing a dark colored hoodie with white strings handing from the neck, the hoodie was beneath a black jacket, dark pants, white and black gloves, a black ski mask, armed with a silver and black handgun and carrying a black book bag. Once inside the KFC, the suspect approached the manager and demanded money and once the manager stated there was no money, the suspect fled out of the rear door towards the area of a silver or gold four-door sedan that was seen fleeing the area through the nearby McDonalds parking lot. A review of video from the parking lot revealed the fleeing vehicle to be a silver or gold newer model Buick Lacrosse. A canvass of the 57th Street, N.E., area later that evening revealed a silver Buick Lacrosse parked in front of 611 57th Street, N.E. The vehicle, bearing DC registration EP4212, was registered to Terri Holman of 611 57th Street, N.E. This address was less than a block away where the GPS tracking pack was discarded following the CVS robbery on December 26, 2014. On February 6, 2015 at

approximately 1:15 a.m. the silver Buick was located in front of the residence along with a 2015 Buick Lacrosse bearing Maryland registration 9BP9073. The second Buick is registered to Enterprise Rental Corporation and investigation revealed that it was currently being rented by the same Terri Holman. Information provided by the Prince George's County Police Department to members of the FBI on the morning of February 6, 2015, revealed that Terri Holman was associated with a DAVID FLOWERS, a black male, date of birth, 6/17/1966, 6' 01" tall, approximately 160 to 170 lbs, who also resides at 611 57th Street N.E., Washington, DC. On the same date, at approximately 7:35 a.m., members of the FBI and MPD observed the aforementioned gold Buick Lacrosse bearing Maryland registration 9BP9073 parked out front of the residence.

**Armed robbery (attempt) of the Popeye's Restaurant on February 6, 2015.**

29. On February 6, 2015, at approximately 8:50 a.m., a suspect walked into the Popeye's Restaurant located at 2721 Naylor Road S.E. The suspect brandished a handgun and demanded money. The suspect was described as a black male, light complexion, 6'03" tall, wearing a blue hoodie with light colored draw strings, a black mask covering his nose and below, a black waist-length jacket, dark colored pants, black and gray mechanic gloves, and armed with a silver semi-automatic pistol with a black stripe down the barrel. The suspect fled without obtaining any money or property.

30. The store video from the Popeye's depicted the suspect as a black male wearing a black mask with his eyes uncovered, a dark colored jacket, a dark colored hoodie with white strings hanging from the neck, dark pants and dark shoes and two-tone colored gloves: the palms were black and the back of the hands were white. He was armed with a silver colored semi-automatic pistol with a white stripe down the barrel. Members of the FBI confirmed this

11

description in person and the method of robbery shortly after the robbery occurred with one of the employees who still on scene. This information was then relayed to MPD Detectives and additional FBI agents assisting on the investigation that morning.

31. For this alleged attempted robbery, the defendant is charged under Counts Twenty, Twenty-One, and Twenty-Two of the Indictment for, respectively, committing the crimes of Attempted Interference with Interstate Commerce, Attempted Armed Robbery, and Possession of a Firearm During a Crime of Violence

32. After the Popeye's robbery, MPD Detectives and FBI agents responded to conduct surveillance in the area of 611 57th Street N.E. after this attempted robbery. They observed a Buick Lacrosse drive up and stop in front of 611 57th Street N.E. A black male, wearing a white shirt, dark pants, and black shoes exited the vehicle and proceeded towards the residence. A short time late, the same black male then came back into the Buick Lacrosse this time wearing a dark jacket and blue jeans, entered the Buick, parked the vehicle in the rear of the residence and went inside of 611 57th Street N.E.

33. MPD Detective Chad Howard, who was one of the lead MPD Detectives of this series of armed robberies and who was on surveillance at 611 57th Street N.E., then responded to the attempted robbery scene at 2721 Naylor Road N.E. to meet with Special Agent Jeffrey Johannes, who was the lead FBI agent on the case at the time. While on the scene, Detective Howard observed a gold Buick Lacrosse at the nearby traffic light. Detective Howard drove behind the vehicle and observed that it was the same gold Buick Lacrosse (bearing Maryland tags 9BP9073) that he had previously observed at 611 57th Street N.E. The Buick made a right turn from Good Hope Road onto 16th Street, S.E., without using a turn signal and Detective Howard along with additional MPD Officers, conducted a traffic stop. The driver, subsequently identified

as David Flowers, stated he did not have his license on him and that he was on the phone with his girlfriend, Terri Holman. Detective Howard saw in plain view on the front passenger seat a hooded sweatshirt with white strings hanging from the neck. Detective Howard also observed a black skull cap and a dark colored shirt also on the front passenger seat. He also observed the tip of gloves in the storage pocket on the rear of the driver seat. Detective Howard saw that these gloves were two tone in color: the palms were black and the back of the hands were white. Special Agent Johannes arrived at this location and conferred with Detective Howard. Based upon the foregoing, Detective Howard placed FLOWERS under arrest and into MPD custody. The Buick was seized as evidence and the residence at 611 57th Street N.E. was secured by Metropolitan Police Department officers, pending the execution of search warrants.

**Interview of Terri Holman.**

34. Following FLOWERS' arrest, Terri Holman was interviewed. During the interview, Holman stated that she and FLOWERS were married, and that they resided at 611 57th Street N.E. Holman further stated that she had rented the gold Buick Lacrosse, bearing Maryland License Plate 9BP9073, in which FLOWERS was arrested. A review of the rental agreement for that vehicle confirmed Holman as the renter. No other authorized drivers are listed on that agreement. Holman also claimed that she rented the silver Buick Lacrosse, bearing DC registration EP4212, even though that vehicle was registered to Terri Holman of 611 57th Street, N.E. Holman consented to a search of this vehicle. Subsequent investigation revealed that she rented vehicles on a regular basis from Enterprise Rent-A-Car. Public records database searches further revealed that beginning in 2011, Holman had a 2005 Nissan Murano sport-utility vehicle registered to her. This vehicle is consistent with the small, red sport-utility vehicle which was rounded (not boxy) and which appeared to be a Nissan or Toyota observed by a witness following

the February 7, 2014 Ashely Stewart robbery. A family member of FLOWERS informed law enforcement that Holman had been observed driving a red sport-utility vehicle in early 2014.

### Execution of D.C. Superior Court Search Warrants

35. MPD Detectives obtained search warrants for the gold Buick Lacrosse (bearing Maryland tags 9BP9073) and for 611 57th Street, N.E. During a search of the vehicle, law enforcement recovered, inter alia, clothing and shoes consistent with those described by witnesses and depicted in surveillance video including a blue sweatshirt with a white Champion logo, white plastic bags, gloves with a black rubber bottom and gray top with a Memphis Foam design on top, a black head cover, a black knit cap, Maryland Live casino chips and voucher, and an Enterprise rental agreement in the name of Terri Holman. Two cell phones also were recovered, including an HTC touch screen cell phone (hereinafter, the "Target Cell Phone"), which is currently located at the FBI's Washington, D.C. Field Office, 601 4th Street, N.W.

36. During a search of the residence, law enforcement recovered, inter alia, additional clothing and shoes consistent with those described by witnesses and depicted in surveillance video including a black jacket, a hoodie, gloves, plastic bags, a black BB pistol, a cell phone, and a notice of infraction. Law enforcement also recovered stacks of money from a shelf and windowsill in the closet in the bedroom.

### The Target Cellular Phone

37. Following the seizure of the Target Cellular Phone, members of the FBI Washington Field Office, Computer Analysis Response Team ("CART"), analyzed the device. Using cellular phone forensics software, the CART members extracted data from the Target Cellular Phone and learned that it is an HTC Desire 610 mobile phone that uses the Android operating system. In addition, the CART members learned through their analysis that: (1) the

phone number tied to the Target Cellular Phone is 202-255-7183; (2) the Target Cellular Phone was first activated on January 27, 2015; and (3) the Gmail address linked to the phone was KTBROWN2733@GMAIL.COM. Furthermore, a review of the text messages contained in the Target Cellular Phone appeared to contain communications originating from DAVID FLOWERS to other individuals, including his wife Terri Holman.

38. On or about September 15, 2015, Special Agent Jeffrey Johannes of the FBI served an order pursuant to 18 U.S.C. § 2703(d) on AT&T for all cell site information relating to the phone number, 202-255-7183, for the dates of the robberies described above. Members of the FBI analyzed the results obtained from AT&T and learned that the cellular phone using that telephone number hit off cell towers close in time and proximity to some of the robberies described above. This cell cite information obtained from AT&T, however, did not contain GPS location data (or other similar location data) maintained by Google for the KTBROWN2733@GMAIL.COM account tied to the Target Cellular Phone.

39. Location data maintained by Google and associated with this account and mobile device is essential to the investigation of this case. This information may help to establish the defendant's whereabouts at the time of the offenses in question and may help to establish that the defendant was in the vicinity of the offense locations at or near the time the offenses were committed. Specifically, after the defendant activated the Target Cellular Phone on January 27, 2015, the defendant is alleged to have committed two additional robberies, one of which he is charged in the Indictment as committing (i.e., the February 6, 2015 attempted robbery of the Popeye's restaurant in Washington, DC) and one of which the government will introduce evidence of at trial under Federal Rule of Evidence 404(b) (i.e., the February 5, 2015 attempted robbery of the KFC restaurant in Prince George's County, Maryland). Location data maintained by Google

may assist the government in proving the defendant's geographic location and whereabouts during the commission of these alleged crimes.

## **APPLICATION**

40.     Your affiant respectfully requests that a search warrant be issued for authorization to search all location data, whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, and precision measurement information such as timing advance or per call measurement data, and Wi-Fi location, including the GPS coordinates and the dates and times of all location recordings, from Google, in accordance with the search procedures described in Attachment A, from January 27, 2015 (the date that DAVID FLOWERS activated the Target Cellular Phone) to February 7, 2015 (the date of DAVID FLOWERS's arrest).

_____
ROBERT GRAVES
Special Agent, Federal Bureau of Investigation

Subscribed and sworn before me this \_\_\_day of March, 2016.

_____
G. MICHAEL HARVEY
United States Magistrate Judge
for the District of Columbia

**ATTACHMENT A**

I.  **Service of Warrant and Copying of Computer Files by Google**

    A.  The officer or agent executing this warrant shall effect service by any lawful method including faxing the warrant (with Google's consent) to Google's offices at the location specified in the warrant.

    B.  The officer or agent executing this warrant shall permit Google, as custodian of the computer files described in Section II below, to locate the files, copy them onto removable electronic storage media or print them out as paper copies (or use a different copying method if specified in Section II below), and deliver the copies to the officer or agent, who need not be present during this process at the location specified in the warrant.

II.      **Files and Account to be Copied and Delivered by Google Employees**

    All location data, whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, and precision measurement information such as timing advance or per call measurement data, and Wi-Fi location, including the GPS coordinates and the dates and times of all location recordings, for the account, KTBROWN2733@GMAIL.COM, from January 27, 2015 to February 7, 2015.